# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58854-4-II |
| Respondent, | |
| v. | |
| ANTONIE RYAN SMITH, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Antonie Smith appeals his termination from the Kitsap County Adult Drug Court Program (ADCP) and his convictions for eluding a police vehicle and residential burglary. He argues that the drug court erroneously terminated him because it denied him due process. He also argues the evidence was insufficient to support his convictions.[1] Smith asks us to reverse his ADCP termination and vacate his convictions arrived at pursuant to a stipulated facts bench trial.

We hold Smith's ADCP termination violated his procedural due process rights. Therefore, we reverse Smith's termination and remand for the trial court to conduct termination proceedings that comply with due process. And because trial would not have occurred if not for termination,

---

[1] Smith also argues through his statement of additional grounds that that he did not receive adequate credit for time served, that his attorney was not present during his termination and sentencing hearing, and that he did not receive a bench trial as agreed. We need not address these arguments in light of our decision here.

we vacate his convictions and remand for a new trial consistent with the drug court agreement, should the trial court terminate again on remand.

## FACTS

I.     BACKGROUND

In 2021, Smith was charged in Kitsap County with several felonies. Smith petitioned the court to allow him to participate in the ADCP with the understanding that his charges would be dismissed with prejudice should he succeed in the program.

Smith agreed to comply with ADCP terms and conditions, including: maintaining his treatment plan; attending court sessions, treatment obligations, and compliance appointments; and obeying the law. He also agreed that should the drug court team determine him to be in violation of the ADCP agreement, he would be subject to revocation and would have his charges adjudicated in a stipulated facts bench trial. Smith signed his petition, stating that he had thoroughly reviewed the document and entered into the agreement freely and voluntarily. Smith participated in the drug court program for three to four months.

II.    DRUG COURT TERMINATION, STIPULATED FACTS BENCH TRIAL, AND SENTENCING

On June 17, 2022, the trial court issued a bench warrant for Smith for failure to appear for a drug court review hearing, a positive UA (urinary analysis), for missing group, and for failure "to respond to compliance or treatment." Clerk's Papers (CP) at 77.

On May 15, 2023, the bench warrant was returned with the following handwritten note: "Served at Thurston Co. Jail will pick up when done with local charges." CP at 78.

On August 24, the State filed a motion to terminate Smith's drug court participation. The motion stated that Smith violated drug court requirements by "[c]ommitting new law violations" and for being "on warrant status for 425 days." CP at 48.

2

On the same day, the trial court held a hearing where it appears the court addressed Smith stating, "[t]here is a motion as well filed for you in this case as well . . . based on new law violations and being on warrant status for 425 days." Rep. of Proc. (RP) at 47. The court also said, "you can talk to [defense counsel] about your options." RP at 47.

On September 14, 2023, the trial court terminated Smith:

[THE COURT:] All right, Antonie, you know there was a motion for termination from the Court filed. Have you had an opportunity to speak to either [defense counsel] about your rights associated with that?
          [SMITH:] Yes, Your Honor. I spoke with both of them actually.
          THE COURT: Okay. All right. And it looks like this morning we're prepared to move forward with the termination?
          [SMITH:] Yes, ma'am.
          . . . .
          COURT: All right. So the Court is signing off on the order for termination. The reasons were outlined in the motion that was provided to you.

RP at 48-49.

Immediately following termination, the court found Smith guilty in a stipulated facts bench trial, stating the following:

I've taken the opportunity before coming out this morning to review the police reports attached to your Amended Information. And based on those reports, I am able to make a finding of guilty [beyond a] reasonable doubt to all nine of the counts outlined in that First Amended Information, okay?
. . . I just reviewed the findings of fact and conclusions of law that the attorneys have handed up to me. I believe that they accurately summarize those police reports that I reviewed this morning. And so I've signed off on that as well.

RP at 49.

The court then moved on to Smith's sentencing. During sentencing, Smith's counsel stated that Smith had been incarcerated in Thurston County for the last six months. Smith told the court that after getting let go from his job, he "went out and used" and that he had been "on the run for so long." RP at 54. Smith was sentenced to 96 months.

Smith appeals.

ANALYSIS

I.     THE COURT DENIED SMITH DUE PROCESS WHEN TERMINATING HIM FROM DRUG COURT

Smith argues that the trial court violated his procedural due process rights when it terminated him from drug court. Specifically, he argues that (1) the State's motion was insufficient to meet the due process requirement of notice, (2) the court did not inform Smith of his right to challenge termination, (3) the court did not make necessary findings that a violation of the drug court agreement had occurred, and (4) the State did not provide evidence proving the violation by a preponderance of the evidence. We agree that the court did not inform Smith of his right to challenge termination and his right to an evidentiary hearing. Based on this holding we do not reach the remaining assignments of error.

A.     We Exercise Our Discretion to Review Smith's Claim of Constitutional Error

The State argues Smith did not preserve his procedural due process claim and therefore must make a showing of manifest constitutional error. We exercise our discretion to review the alleged error. RAP 2.5(a) (An "appellate court *may* refuse to review any claim of error which was not raised in the trial court." (emphasis added.)); *see* RAP 1.2(a), (c); *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995) ("[A]n appellate court may exercise its discretion to consider cases and issues on their merits.").

B.     Standard of Review

We review questions of law, including due process guaranties, de novo. *State v. Starkgraf*, 29 Wn. App. 2d 30, 45, 539 P.3d 855 (2023), *review denied*, 2 Wn.3d 1032 (2024).

C.      Legal Principles

Individuals cannot be deprived of life, liberty, or property without due process.  U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3.  Procedural due process requires an individual receive notice of the deprivation and an opportunity to be heard.  *See Starkgraf*, 29 Wn. App. 2d at 45.

"'Due process guaranties apply in drug court' termination proceedings."  *Id.* (quoting *State v. Harrison*, 24 Wn. App. 2d 40, 48, 519 P.3d 244 (2022)).  Drug court participants "must be informed before or during the termination hearing of the State's specific reasons for termination." *Starkgraf*, 29 Wn. App. 2d at 50 (emphasis omitted); *Harrison*, 24 Wn. App. 2d at 50.  Participants must "be informed of their 'right to contest the termination or the alleged violations of the drug court agreement that supported termination.'"  *Starkgraf*, 29 Wn. App. 2d at 45 (quoting *Harrison*, 24 Wn. App. 2d at 51).  Participants must also be informed of their "'right to an evidentiary hearing.'"  *Starkgraf*, 29 Wn. App. 2d at 45 (quoting *Harrison*, 24 Wn. App. 2d at 51).  The trial court must determine by a preponderance of the evidence whether the drug court agreement was violated, with the burden of proof on the State.  *Harrison*, 24 Wn. App. 2d at 51; *see Starkgraf*, 29 Wn. App. 2d at 45.  "[T]he trial court must make 'written or oral findings clearly stating the evidence [supporting] terminat[ion].'"  *Starkgraf*, 29 Wn. App. 2d at 45-46 (quoting *Harrison*, 24 Wn. App. 2d at 51).  Additionally, where there is a constitutional error, prejudice is presumed and the State bears the burden of proving it was harmless beyond a reasonable doubt.  *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013).

In *State v. Cassill-Skilton*, we held that the drug court termination violated the defendant's due process rights because, among other deficiencies, there was no opportunity for a hearing on the alleged violations. 122 Wn. App. 652, 658, 94 P.3d 407 (2004). We stated that the proper procedure requires the "court to conduct a hearing, after notice, to determine whether to terminate a participant from the program. . . . The offender is able to present evidence." *Id*. To protect these rights, we have since held that due process requires that the trial court inform the defendant of the "'right to contest [both] the termination or the alleged violations,'" and the "'right to an evidentiary hearing.'" *Starkgraf*, 29 Wn. App. 2d at 45 (quoting *Harrison*, 24 Wn. App. 2d at 51).

In *Harrison*, we held that each of the five due process guaranties were violated. 24 Wn. App. 2d at 51. There, the defendant was never informed of the reasons for his termination. *Id*. He was never informed of his right to contest termination or the alleged violations of the drug court agreement supporting termination, or of his right to an evidentiary hearing. *Id*. The trial court failed to state at termination that it had determined the defendant had violated the agreement by a preponderance of the evidence with the burden of proof on the State. *Id*. Finally, the "court made no written or oral findings clearly stating the evidence on which it relied in terminating [the defendant] from drug court." *Id*.

Then, in *Starkgraf*, we held that the drug court's termination procedure comported with due process. 29 Wn. App 2d. at 46. In that case, the defendant "was informed before the termination hearing of the State's specific reasons for seeking termination," satisfying the notice requirement. *Id*. The defendant "hired an attorney to represent him at the termination hearing," creating an inference "that he was informed of his right to contest the termination and of his right to an evidentiary hearing." *Id*. The defendant evidenced his awareness of his rights by exercising them. He participated in the termination hearing, provided argument, called witnesses, and even

6

requested a continuance so that he could present testimony from a witness. *Id.* The court there "made oral findings of fact that explained which drug court violations the State had proved by a preponderance of the evidence," and "reiterated those findings in writing." *Id*. at 46-47.

D.      Analysis

The State argues that procedural due process was "satisfied" because Smith received "sufficient due process in terms of notice," and because Smith did not "ask the trial court to decide disputed facts." Br. at Resp't at 18-19  We disagree.

The State cites to *Cassill-Skilton* in support of its argument that Smith received proper notice. The State suggests that this case is unlike *Cassill-Skilton* because Smith "got notice of the proposed revocation well in advance of the hearing," Smith "conferred with counsel about the motion before the hearing," and "the motion included the specific reasons for revocation." Br. of Resp't at 18-19. This argument, though, does not address whether Smith was informed of his rights to contest, or to an evidentiary hearing, or whether the court issued a proper determination and findings.

Furthermore, whether Smith, as argued by the State, asked the trial court to decide disputed facts are immaterial because they have no bearing on whether Smith knew of his rights in the first instance. Unlike *Starkgraf*, Smith did not take the affirmative step of hiring an attorney, and did not exercise his rights like the defendant in *Starkgraf*. Also, unlike *Starkgraf*, where the defendant robustly exercised his rights to a hearing, to contest the evidence, and call witnesses, the record before us is bereft of similar circumstances. Instead, like *Harrison*, nothing in the record here shows Smith was informed of his right to contest the termination or his right to an evidentiary hearing. Though the court asked Smith whether he had spoken with his attorneys about his rights associated with termination and Smith responded affirmatively, this is insufficient to establish that

7

he was aware of the full panoply of rights due when facing termination. We hold the trial court erred by failing to inform Smith of his rights.

The trial court also erred by not determining on the record that Smith violated the drug court agreement by a preponderance of the evidence, and also in failing to make written or oral findings clearly stating the evidence supporting Smith's termination, as required by *Harrison*. 24 Wn. App. 2d at 51. Here, the court merely signed off on the order for termination based on reasons outlined in the motion that was provided to Smith. This falls well short of the requirement for findings as articulated in *Starkgraf*. 29 Wn. App. 2d at 43. Therefore, Smith's procedural due process guaranties were violated.

The State argues that "if the trial court erred in failing to require that the exact nature of the new law violation be shown, that error was harmless" because "Smith conceded the point," Smith's "absence from the program for 465 days independently supports termination," and the "plain grounds asserted and credited by the trial court . . . can be easily rewritten into violations of multiple specific provisions of the drug court agreement." Br. of Resp't. at 21-22. The State does not make a harmless error argument regarding the error arising from failure to notify Smith of his rights to contest termination and have an evidentiary hearing. We will not make that argument on behalf of the State. The State has not shown that the error found here is harmless.

## CONCLUSION

Accordingly, we reverse Smith's termination and remand for the trial court to conduct termination proceedings anew. And because trial would not have occurred if not for termination, we vacate Smith's convictions and remand for a new trial consistent with the drug court agreement, should the trial court terminate again on remand.

58854-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, A.C.J.

I concur:

Maxa, J.

9

GLASGOW, J. (dissenting in part) — I agree with the majority that the trial court erred when it failed to state on the record, either in its written findings and conclusions or in its oral ruling, the evidence supporting Smith's termination from drug court or that Smith violated the drug court agreement by a preponderance of the evidence as required. I disagree with the majority in all other respects.

GLASGOW, J.